UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| K VINTNERS, a Washington Corporation, and TIGER MOUNTAIN TRANSPORT, LTD., <br><br>                Plaintiffs, <br><br>    v. <br><br> UNITED STATES OF AMERICA, <br><br>                Defendant. | NO:  12-CV-5128-TOR <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 4). This matter was heard with telephonic oral argument on February 21, 2013. Frederick B. Rivera and Michael T. Reynvann appeared on behalf of Plaintiff K Vintners.  Eugene W. Wong appeared on behalf of Plaintiff Tiger Mountain Transport, Ltd.  Nathaniel B. Parker and Lee Perla appeared on behalf of Defendant.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

ORDER DENYING MOTION TO DISMISS ~ 1

## BACKGROUND

This is an action to recover federal excise taxes on wine produced by Plaintiff K Vintners.  Plaintiffs seek to recover $433,238.37 in tax assessments stemming from K Vintners' allegedly improper claim to the "Small Producers Tax Credit" set forth in 26 U.S.C. § 5041(c).  The Government asserts that K Vintners lacks standing to pursue the requested relief on the ground that Plaintiff Tiger Mountain, rather than K Vintners, was liable for the tax assessment at issue.  It further argues that K Vintners' claim for a refund of the taxes at issue is time-barred under 26 U.S.C. § 6532(a)(1).[1]

## FACTS

The following facts are drawn primarily from Plaintiffs' Complaint and are accepted as true for purposes of this motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiff K Vintners is a small domestic wine producer located in Walla Walla, Washington.  In 2005, 2006, 2007 and 2008, K Vintners produced 190, 360, 375 and 180 wine gallons, respectively, at its premises in

---

[1] The Government also seeks to dismiss Plaintiffs' third cause of action seeking abatement.  Plaintiffs agreed to voluntarily dismiss count three of the Complaint. ECF No. 14 at 3, ftnte 1.

ORDER DENYING MOTION TO DISMISS ~ 2

Walla Walla.  Due to the limited capacity of its onsite production facilities, K

Vintners also contracted with two larger wineries, Hogue Cellars and Wahluke

Slope Vineyards, to produce, bottle and label additional quantities of wine under

its direction.  K Vintners held title to all of the wine produced under its name at

Hogue and Wahluke Slope.

　　　　Beginning in 2005, K Vintners contracted with Plaintiff Tiger Mountain

Transport, Ltd. to transport the wine produced at the Hogue and Wahluke Slope

facilities to Tiger Mountain's warehouse in Kent, Washington, to be stored prior to

sale and distribution.  The parties specifically agreed that Tiger Mountain would

pay all federal excise taxes on the wine being stored at its warehouse (including the

wine produced at the Hogue and Wahluke Slope facilities) and then seek

reimbursement from K Vintners.  The parties also agreed that Tiger Mountain

would claim a "Small Producers Tax Credit" to which they believed K Vintners

was entitled.  Pursuant to this arrangement, Tiger Mountain paid all taxes, less the

amount of the Small Producers Tax Credit, for the tax years 2005 to 2008.

　　　　In 2006, the federal Alcohol and Tobacco Tax and Trade Bureau ("TTB")

conducted an audit of Tiger Mountain for the tax years 2004 and 2005.  Following

the audit, K Vintners and the TTB "engaged in extensive discussions and email

correspondence regarding the Small Producers Tax Credit, how K Vintners was

taking and applying the credit, and the proper application of the credit to K

Vintners' winery." ECF No. 1 at ¶ 18. According to Plaintiffs, these discussions culminated in the TTB stating "without equivocation, that K Vintners properly utilized the Small Producers Tax Credit." ECF No. 1 at ¶ 19.

In 2007, the TTB conducted a second audit of Tiger Mountain for the tax years 2005 and 2006. Plaintiffs alleged that this audit resulted in a finding that "K Vintners was not eligible for the Small Producers Tax Credit in 2005 and 2006 for wine produced at Hogue Cellars and shipped directly to [Tiger Mountain]" because the wine never physically touched K Vintners' premises and consequently "had not come within K Vintners' bond." ECF No. 1 at ¶ 20. As a result of this finding, the TTB invalidated the purported transfer of the Small Producers Tax Credit to Tiger Mountain.

The TTB subsequently issued a tax assessment against Tiger Mountain in the amount of $433, 238.37 for the years 2005 to 2008. Tiger Mountain paid the assessment under protest in three separate installments beginning in 2008. Shortly thereafter, K Vintners reimbursed Tiger Mountain for the full amount paid.

K Vintners filed a letter claim for reimbursement with the TTB on July 31, 2009. ECF No. 6-1. The TTB denied the request by letter dated December 22, 2009. ECF No. 6-3. K Vintners, along with Tiger Mountain, responded to the TTB's letter on November 3, 2010. ECF No. 6-5. The TTB replied on April 5,

ORDER DENYING MOTION TO DISMISS ~ 4

1  2011, denying the request for reimbursement.  ECF No. 6-6.  Plaintiffs

2  subsequently filed this lawsuit on October 1, 2012.

3                                  DISCUSSION

4  **A. Standing**

5          The Government has moved to dismiss K Vintners as a party to this lawsuit

6  for lack of "statutory" standing to file a claim under 26 U.S.C. § 7422.  The

7  Government argues that K Vintners cannot establish standing because it was not

8  the taxpayer liable for nor did it bear the ultimate burden for the tax assessment at

9  issue.  *See* ECF No. 16 at 5 ("K [Vintners] cannot be a plaintiff in this suit because

10 it never bore the ultimate burden of the excise tax and was, in fact, legally relieved

11 of the burden of paying the tax.").  In the Government's view, Tiger Mountain—as

12 the only party liable for the assessment—is the only party with statutory standing

13 to pursue a refund.

14         The Government is correct that Tiger Mountain, rather than K Vintners, is

15 liable for the assessment.  As the Government correctly notes, Tiger Mountain

16 became solely liable for all excise taxes when it removed the wine "under bond"

17 from K Vintners' premises to its own premises.  *See* 26 U.S.C. § 5043(a)(1)(A)

18 (liability for taxes on wine transferred between bonded premises "shall become the

19 liability of the transferee from the time of removal of the wine from the

20 transferor's premises").  As of the moment that Tiger Mountain removed the wine,

ORDER DENYING MOTION TO DISMISS ~ 5

1    K Vintners was relieved of all tax liability.  26 U.S.C. § 5043(a)(1)(A).  The

2    removal of the wine also vested Tiger Mountain with the right to claim any tax

3    credits—including the Small Producers Tax Credit—which K Vintners could have

4    claimed before the wine was removed.  26 U.S.C. § 5041(c)(6).  Accordingly, K

5    Vintners' argument that it has standing to pursue a refund merely because it was

6    contractually "ultimately responsible" for the tax assessment is unavailing.

7          Contrary to the Government's assertions, however, standing to pursue a tax

8    refund is not strictly limited to parties who are liable for the taxes at issue.  Rather,

9    as the Supreme Court explained in *United States v. Williams*, the rule that parties

10   generally may not challenge the tax liability of others is not unyielding.  514 U.S.

11   527, 539 (1995).  In *Williams*, the Government argued that the former wife who

12   paid a tax lien on her property, arising from tax liabilities incurred by her former

13   husband, did not have standing to seek a refund.  The Supreme Court rejected this

14   argument for several reasons.  The Supreme Court recognized the broad language

15   contained within the statutory waiver of sovereign immunity which allows a civil

16   action for the recovery of "any . . . . tax alleged to have been erroneously or

17   illegally assessed or *collected* . . . ."  *Id.* 531-32; 28 U.S.C. § 1346(a)(1).  The

18   Government argued that the former wife was required to exhaust her administrative

19   remedies, only a taxpayer can exhaust, and that she is not a taxpayer.  The

20   Supreme Court rejected these arguments noting that such a strained reading of the

ORDER DENYING MOTION TO DISMISS ~ 6

1  statute would leave the former wife without a remedy. *Id.* at 536. It recognized

2  that the former wife had filed an administrative claim and flatly rejected the

3  Government's argument that she had to be the taxpayer in order to seek a refund.

4  The Supreme Court recounted other laws allowing third parties to litigate

5  taxpayers' liability, and most significant to the case at hand, cited to a case

6  allowing cotton producers to bring a refund suit for a federal cotton ginning tax

7  assessed against the ginner rather than the producers. *Id.* at 539 (*citing Stahmann*

8  *v. Vidal*, 305 U.S. 61 (1938)).

9       The Court finds *Stahmann v. Vidal* to be most informative and authoritative.

10  In *Stahmann*, the cotton growers produced a quantity in excess of the allotment for

11  which the terms of an Act of Congress allowed tax exemption certificates. The

12  producers delivered the excess cotton to a gin company for ginning. The IRS

13  assessed a tax against the gin company who then refused to deliver the ginned

14  cotton to the producers until they paid the tax. The producers paid the tax assessed

15  against the ginner. When the producers sued the IRS for a refund, the IRS claimed

16  the producers volunteered to pay someone else's tax and therefore did not have

17  standing to maintain an action for a refund. The Supreme Court held the producers

18  were entitled to maintain the action for a refund:

19          The purpose of the Bankhead Act was to restrict the production of
            cotton and, to that end, to levy a heavy tax in respect of that produced
20          in excess of the farmer's quota. The tax bore no relation to the ginning
            of cotton. On the contrary, it was intended to fall, and the Act

ORDER DENYING MOTION TO DISMISS ~ 7

attempted to make it fall, upon the producers. The assessment of the tax against the ginner was intended to immobilize the cotton in his possession until the producer should liquidate the tax. This is evident from the provisions which impose a lien upon the cotton for the amount of the tax upon removal of it from the gin without payment of the tax and while permitting it to be stored by the producer, forbid the opening of a bale or the sale of it until the tax liability shall have been discharged. Plainly the purpose was that if the ginner should release the cotton to the producer while the tax remained unpaid the lien upon it would insure payment by the producer.

The scheme of the Act sets the case apart from any to which our attention has been called arising under other taxing acts. The collector was part of the machinery for compelling the farmer to pay the tax, for immobilizing the cotton and making it unusable until the assessment he had made against the ginner was satisfied by payment of the tax. Whether or not the tax was imposed upon the petitioners, they are, according to accepted principles, entitled to recover unless they were volunteers, which they plainly were not because they paid the tax under duress of goods.

*Id.* at 65-66.

In this case, Tiger Mountain merely serves as a bonded transporter and warehouse for the wine as it travels from producer to retailer and then to the consumer.  The IRS appears to impose the tax upon Tiger Mountain as a convenient collection point in the stream of commerce.  In this case, based on the facts before the Court, K Vintners owned the wine and directed its destination for sale.  Just like in *Stahmann*, the middle-man incurred the tax assessment on goods owned by the producer, but only as a convenient collection point.  Like Stahmann Farms, K Vintners was plainly not acting as a volunteer in making the payments and is not barred from maintaining an action for their recovery.

ORDER DENYING MOTION TO DISMISS ~ 8

1        K Vintners has established that it was contractually obligated to reimburse

2   Tiger Mountain for excise taxes paid to the TTB.  The terms of K Vintners'

3   agreement with Tiger Mountain provide that K Vintners "will be billed for Federal

4   Taxes on taxable distribution twice monthly."  ECF No. 22-1 at 1.  Pursuant to this

5   agreement, Tiger Mountain paid the $433,238.37 assessment to the TTB and billed

6   K Vintners for the same amount.  K Vintners subsequently paid the bill.  Given

7   that K Vintners was contractually obligated to make this payment, it has a financial

8   interest in the outcome of this litigation.

9        In response to the Court's request for additional briefing, ECF No. 21, the

10  Government contends that 26 U.S.C. § 6423(a)(2)[2] has no bearing on whether the

11  Court has jurisdiction over K Vintner's refund claim.  The Government cites to the

12  legislative history of § 6423 in support of its argument.  Additionally, the

13  Government points to a primary concern of Congress in enacting § 6423 was to

14  prevent unjust enrichment arising when a taxpayer is reimbursed, through the sales

15  price of the commodity, for excise taxes by a purchaser out-of-bond, and then the

16

17  ───────────────

    [2]  26 U.S.C. § 6423(a)(2) provides, "No credit or refund shall be allowed or made .

18  . . unless the claimant establishes . . . (1) that he bore the ultimate burden of the

19  amount claimed; or (2) that he has unconditionally repaid the amount claimed to

20  the person who bore the ultimate burden of such amount[.]"

ORDER DENYING MOTION TO DISMISS ~ 9

taxpayer receives a refund or credit in the event the tax is overpaid.  ECF No. 23 at

3, 104 Cong. Rec. 1050.  The Government contends a refund is not allowed in this

situation and seems to imply that K Vintners cannot satisfy this test.  Here

however, the imposition of tax was a result of an after-the-fact audit in 2007 which

denied previously claimed credits in 2005 and 2006.  It seems highly unlikely that

the tax would have been passed through to consumers when the parties were

unaware of the additional tax burden until months later.  In any event, that issue is

not presently before the Court.

      The legislative history of § 6423 appears to contemplate the exact situation

presented in *Stahmann* and the case at hand.  The Senate Report, under subsection

III, Explanation of the Bill, provides:

> This subsection also makes provision for cases where the
> taxpayer is not the owner of the taxed commodity.  For example, in
> the case of distilled spirits withdrawn from internal revenue bond, the
> tax is paid by the warehouseman holding the spirits, and the
> warehouseman is therefore the only person entitled to file claim for
> refund of such tax.  However, in many instances he is not the owner of
> the spirits.  In such cases the owner is likely to supply the
> warehouseman with the amount of the tax to secure the release of the
> spirits from bond.  This subsection recognizes the equities of the
> owner under these circumstances even though he was not the
> taxpayer.  It permits the warehousemen in these cases to claim the
> refund or credit where the owner has given his written consent to
> allowance of the refund to the claimant warehouseman if the owner
> bore the ultimate burden of the tax or has unconditionally repaid the
> amount claimed by the person who bore the ultimate burden of the
> tax.

1958 U.S.C.C.A.N. 2192, 2194-95.  If the owner can give his written consent for the warehouseman to pursue the refund, it seems clear that the owner must have the right to himself seek the refund on his own behalf in the first instance.  This would also be in accord with the Supreme Court's holding in *Stahmann.*

One thing seems quite clear from reading the legislative history, given the facts of this case, Tiger Mountain did not bear the ultimate burden of the tax and thus, under the provisions of § 6423 designed to prevent unjust enrichment, without more it would not independently be entitled to seek a refund.

The Court finds neither *Atlas Hotels, Inc. v. United States*, 140 F.3d 1245, 1246 (9th Cir. 1998) nor *Bruce v. United States*, 759 F.2d 755, 759 (9th Cir. 1985), to be helpful or informative given the facts of this case.  *Atlas Hotels* involved agreements between plaintiffs and a payroll tax company that paid the taxes "provided that the [plaintiffs] were not obligated to reimburse [the payroll tax company] for penalties paid."  That situation is wholly unlike the case at hand. *Bruce* involved a tax shelter scheme where the plaintiff was under no obligation to repay the tax shelter attorney who paid Bruce's taxes.

Accordingly, the Court finds that K Vintners has standing to pursue this refund suit.

///

///

**B. Statute of Limitations**

The statute of limitations on a claim for a tax refund under 26 U.S.C. § 7422 is two years from the date on which the IRS denies the plaintiff's administrative refund claim.  26 U.S.C. § 6532(a)(1).  The issue presented in the instant motion is when the statute of limitations on K Vintners's claim began to run.  The Government contends that the limitations period began to run on December 22, 2009, the date on which the TTB denied K Vintners's initial request for a refund. K Vintners counters that the statute of limitations did not begin to run until April 5, 2011, the date on which the TTB denied a follow-up request which K Vintners (and Tiger Mountain) submitted in response to the TTB's initial decision.[3]

The Court finds that the statute of limitations did not begin to run until April 5, 2011.  Contrary to the Government's assertion, the TTB's December 22, 2009 letter cannot be construed as a denial of a claim for refund "on the merits." Although the letter contains some analysis of the merits of the claim, the analysis is prefaced by statements to the effect that the TTB is precluded from fully evaluating the claim.  Specifically, the letter states that K Vintners and its attorneys are not

_____

[3]  The Government concedes that Tiger Mountain's November 8, 2010 claim was denied on April 5, 2011, and thus this suit was brought timely by Tiger Mountain. ECF No. 5 at 7, fn. 2.

authorized to "interact with TTB on behalf of Tiger Mountain [or] represent Tiger

Mountain on matters pending before TTB," and that, as a result, the TTB is

"precluded by law to address [sic] the substantive merits of this matter" with K

Vintners.  ECF No. 6-3 at 1-2.  While acknowledging receipt of the "letter request

for a refund of federal excise tax" the TTB letter categorically states that K

Vintners' letter "does not comport with federal regulations relating to the filing of

claim[s] for refund" and "all claims filed for a refund of taxes will be filed on TTB

F[orm] 5620.8."  ECF No. 6-3 at 1 and 4.  TTB itself did not treat the letter as a

true claim for refund, it said, "the *proposed* Request for Refund . . . . is denied."

ECF No. 6-3 at 9 (emphasis added).  In light of all this qualifying language, K

Vintners could not have reasonably been expected to interpret the letter as a full

denial on the merits of a formal claim for refund.  Indeed, the letter appears to call

upon K Vintners and its attorneys to submit additional information using the

proper claim form with proper authorizations.  Accordingly, the Court finds that K

Vintners' response to the TTB's December 22, 2009 letter (accompanied with

signed TTB F 5620.8 forms, ECF No. 6-4) is the operative "claim."  Given that K

Vintners filed the instant lawsuit within two years of *that* claim being denied, its

§ 7422 claim is timely.  *See Huettl v. United States*, 675 F.2d 239, 242 (9th Cir.

1982) (explaining that a successive refund claim resets the two-year statute of

limitations on a § 7422 claim when the successive claim "is based on different facts or legal theories" from those contained in the first claim).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (ECF No. 4) is **DENIED**.

2. Plaintiffs' third cause of action seeking abatement is **DISMISSED** based upon Plaintiffs' representation that they are voluntarily dismissing the same.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** March 4, 2013.



THOMAS O. RICE
United States District Judge

ORDER DENYING MOTION TO DISMISS ~ 14