1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7 | K VINTNERS, a Washington
Corporation, and TIGER MOUNTAIN

8 | TRANSPORT, LTD.,

NO:  12-CV-5128-TOR

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

9 |                       Plaintiffs,

10 |       v.

11 | UNITED STATES OF AMERICA,

12 |                       Defendant.

13 |       BEFORE THE COURT are the parties' cross-motions for summary

14 | judgment.  ECF Nos. 42, 48.  This matter was heard with oral argument on January

15 | 7, 2015.  Fredrick B. Rivera appeared on behalf of Plaintiff K Vintners.  W. Carl

16 | Hankla appeared on behalf of the United States.  The Court has reviewed the

17 | briefing and the record and files herein and heard from counsel, and is fully

18 | informed.

19 | //

20 | //

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

## PROCEDURAL BACKGROUND

This case concerns Plaintiffs' claim that the Treasury Department's Alcohol and Tobacco Tax and Trade Bureau ("TTB") wrongfully assessed and collected wine excise taxes. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the Court finds the United States is entitled to summary judgment.

## DOMESTIC SMALL PRODUCER CREDIT

The Internal Revenue Code imposes an excise tax upon all wine produced in the United States. 26 U.S.C. § 5041. The tax must be paid when the wine is removed from a bonded premises for consumption or sale. 26 U.S.C. §§ 5043(a)(1), 5362(a). Wine may be transferred in bond from one bonded premises to another without incurring payment of the excise tax. 26 U.S.C. §§ 5043(a)(1)(A), 5362(b). In such a case, the transferee is liable for payment of the tax once the wine is removed from the bonded premises for sale or distribution. 26 U.S.C. § 5043(a)(1)(A).

In 1990, the tax rate on still wines and artificially carbonated wines was increased by $0.90 per gallon. Omnibus Budget Reconciliation Act, Pub. L. No. 101-508, § 11201, 104 Stat. 1388-415 (1990). At the same time, Congress enacted a tax credit for small domestic wine producers (the credit at issue in this case), effectively reducing the tax to its previous level:

> [I]n the case of a person who produces not more than 250,000 wine gallons of wine during the calendar year, there shall be allowed as a credit against any tax imposed by this title . . . of 90 cents per wine gallon on the 1st 100,000 wine gallons of wine (other than [champagne or sparkling wine]) which are removed during such year for consumption or sale and which have been produced at qualified facilities in the United States.

*Id.* (codified at 26 U.S.C. § 5041(c)(1)).  The Secretary of Treasury was empowered to prescribe regulations to carry out the purposes of the small producer credit and to prevent the credit from benefiting any person other than small producers.  Pub L. 101-508, § 11201, 104 Stat. 1388-416 (1990) (codified at 26 U.S.C. § 5041(c)(7)).

By its plain wording, the credit established in 26 U.S.C. § 5041(c)(1) was only available to small producers who "removed . . . [wine] for consumption or sale. . . ."  As the TTB explained the historical progression of the statute in a 2007 final rule-making statement,

> The provisions of [26 U.S.C. § 5041(c)(1)] separated the activities of production and removal in such a way that eligibility for the credit was based on removal of wine by an eligible small producer and was not conditioned on the producer actually producing the wine removed. Thus, a proprietor who produced less than 250,000 gallons of wine a year could take the small domestic producer wine tax credit on wine purchased and received in bond as long as the wine was within the first 100,000 gallons of wine removed from the small producer's bonded premises during the calendar year.

> Under the [Omnibus Budget Reconciliation Act of 1990], small wine producers were eligible to take the small producer wine tax credit only on wine removed for consumption or sale by that producer.  If the producer transferred wine in bond to another bonded wine premises

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 3

(for example, a bonded wine cellar used as a warehouse) for storage pending subsequent removal by the warehouse, then the producer could not claim a credit on that wine, since the producer had not removed the wine for consumption or sale. If the warehouse did not produce wine at all, or produced more than 250,000 gallons of wine, then the warehouse was not eligible for the small producer wine tax credit. Even if the warehouse produced wine and was eligible for credit in its own right, its eligibility was limited to the first 100,000 gallons removed during the year. In order to receive the credit, some small wineries began to taxpay their wines at the time of removal and store the wines in a taxpaid status rather than transfer them in bond.

Small Domestic Producer Wine Tax Credit—Implementation of Public Law 104-188, Section 1702, Amendments Related to the Revenue Reconciliation Act of 1990, 72 Fed. Reg. 65452-01 (Nov. 21, 2007).[1]

This oversight in the statute was addressed in 1996 with the retroactive addition of subsection (c)(6), allowing the credit to be claimed by a transferee in bond:

**(6) Credit for transferee in bond.** --If--

**(A)** wine produced by any person would be eligible for any credit under paragraph (1) if removed by such person during the calendar year,

**(B)** wine produced by such person is removed during such calendar year by any other person (hereafter in this paragraph referred to as the "transferee") to whom such wine was transferred in bond and who is

---

[1] Public law 101-508 is referred to interchangeably as the "Omnibus Budget Reconciliation Act" and the "Revenue Reconciliation Act."

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 4

liable for the tax imposed by this section with respect to such wine, and

**(C)** such producer holds title to such wine at the time of its removal and provides to the transferee such information as is necessary to properly determine the transferee's credit under this paragraph,

then, the transferee (and not the producer) shall be allowed the credit under paragraph (1) which would be allowed to the producer if the wine removed by the transferee had been removed by the producer on that date.

26 U.S.C. § 5041(c)(6); *see also* Pub. L. 104-188, § 1702, 110 Stat. 1868–69 (1996).  It is the interplay between these two provisions concerning the tax credit—§ 5041(c)(1) and (c)(6)—that is central to the motions before the Court.

## FACTS

Plaintiff K Vintners is a small winery holding a federal permit to produce and sell wine at its bonded premises in Walla Walla, Washington.  ECF Nos. 43 ¶ 1 (Defendant's Statement of Material Facts); 49 ¶ 1 (Plaintiffs' Statement of Material Facts); 56 at 2 (Plaintiffs' Counterstatement of Material Fact).  At the Walla Walla facility, K Vintners produced 190 gallons of wine in 2005, 360 gallons in 2006, 375 gallons in 2007, and 180 gallons in 2008, the years at issue in this case.  ECF Nos. 43 ¶ 1; 49 ¶ 5; 56 at 2.  Due to limited capacity at its Walla Walla facilities, K Vintners contracted with two larger wineries—Hogue Cellars in Prosser, Washington, and Wahluke Slope Vineyards in Mattawa, Washington—to increase K Vintners' supply of wine.  ECF Nos. 43 ¶¶ 2–4; 49 ¶ 6.  These wineries

fermented, blended, and bottled wine that K Vintners sold under K Vintners' trade names.  ECF Nos. 43 ¶¶ 2, 10; 49 ¶¶ 6, 9; 56 at 3.  The wines produced at these facilities are those at issue in this case (the "Hogue/Wahluke wines").

K Vintners oversaw the production of the Hogue/Wahluke wines, including blending the wines, providing bottling components and labels, and providing some of the grapes and base juice or wine for blending.  ECF Nos. 43 ¶ 11; 44-2 at 10 (Clinton Depo. at 37 ln 14–16); 49 ¶ 6; 56 at 3; 56 at 3, 6.  K Vintners held title to the Hogue/Wahluke wines upon purchasing those wines from the larger bonded wineries.  ECF No. 43 ¶ 5; 56 at 2–3, 4 (". . . K Vintners held title to and had ownership of its wine produced at Hogue and Wahluke's bonded wine premises entirely from the point of purchase through shipment . . . .").  None of the fermenting, blending, or bottling of the Hogue/Wahluke wines occurred at K Vintners' bonded winery in Walla Walla.  ECF Nos. 43 ¶ 3; 49 ¶ 6; 56 at 3.

Plaintiff K Vintners contracted with Plaintiff Tiger Mountain to have the Hogue/Wahluke wines shipped directly to Tiger Mountain's bonded cellar, located in Kent, Washington, to be stored in bond prior to sale and distribution.  ECF Nos. 43 ¶¶ 15, 16; 49 ¶ 8; 56 at 6–7.  The contractual relationship between Plaintiffs obliged K Vintners to reimburse Tiger Mountain for any excise tax paid on the Hogue/Wahluke wines at the time they were removed from bond for distribution.  ECF Nos. 43 ¶¶ 16, 17; 49 ¶ 9, 11; 56 at 7.  The Plaintiffs also agreed that K

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 6

Vintners would transfer its small domestic producer tax credit to Tiger Mountain to reduce Tiger Mountain's excise tax liability.  ECF Nos. 43 ¶ 18; 49 ¶ 9; 56 at 7. Tiger Mountain applied the tax credit when paying the excise taxes due on the Hogue/Wahluke wines.  ECF No. 49 ¶ 12.

In 2006, the TTB audited Tiger Mountain's 2004 and 2005 tax filings, and reviewed K Vintners' filings as part of the audit.  ECF Nos. 49 ¶ 13.  In February and March 2006, Sharon Clinton, K Vintners' business manager, and TTB Specialist Audrey Addison exchanged a series of e-mails.  ECF Nos. 43 ¶ 19; 49 ¶ 14; 56 at 7.  The e-mails indicated that Ms. Clinton was confused about the application of the tax credit, and on February 6, 2006, Ms. Clinton inquired whether TTB Specialist Addison could "review our situation and give us your calculation as to who owes who what?"  ECF Nos. 44-3 at 25; 54-1 at 7.  TTB Specialist Addison responded on February 7, 2006, that for K Vintners to be eligible for the credit it

> 1-Must have produced (NOT BLENDED) wine in the calendar year
>
> 2-Must have produced (NOT BLENDED) less than 250,000 gallons
>
> 3-Must have produced (NOT BLENDED) less than 150,000 to [be] eligible for full $.90 credit
>
> 4-Production between 150,000 to 250,000 gallons, the sliding scale is used BASED ON THE PRODUCTION OF THE CURRENT CALENDAR YEAR to determine credit amount

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 7

5-Credit is only taken up to the first 100,000 gallons REMOVED. After that, full rate is paid.

6-Eligibilty for the Small Producers Tax Credit is refigured each year, based on production for that calendar year.

7-Small Producers Credit cannot be applied to Imported Wines

8-No Credit is taken on Sparkling Wine, however, Sparkling Wine is used to figure production.

ECF Nos. 44-3 at 22–23; 54-1 at 4–5.  TTB Specialist Addison also looked at K Vintners' 2003, 2004, and 2005 Operations Reports and produced the following table for Ms. Clinton:

| TAX YEAR | PRODUCTION in Wine Gallons | YOUR REMOVALS in Wine Gallons | SMALL PRODUCERS CREDIT | COMMENTS |
|----------|---------------------------|-------------------------------|------------------------|----------|
| 2003 | 1,720.00 | 11,270.00 | $.90 | Entitled to all as you cannot count removals to Tiger Mountain as should have been sent & received in bond |
| 2004 | 29.15 | 61,159.82 | $.90 | Same as above |
| 2005 | 190.00 | 6,284.61 | $.90 | Same as above |

ECF Nos. 44-3 at 23; 54-1 at 5.  TTB Specialist Addison concluded, "As you can see, you did not go over the 100,000 wine gallon limit to even worry about the sliding scale.  You cannot claim the removals made to Tiger Mountain as they were made in bond, not tax paid."  ECF Nos. 44-3 at 23; 54-1 at 5.

On March 1, 2006, Ms. Clinton contacted TTB Specialist Addison with additional questions.  On March 13, 2006, TTB Specialist Addison replied by inserting her answers in bold type into Ms. Clinton's e-mail.  The following is a

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 8

reproduction of Ms. Clinton's March 1 e-mail with TTB Specialist Addison's

March 13 responses in bold:

> Audrey, I haven't heard back from you, and am beginning to wonder if my e:mail (sic) of 2/10/6 where I asked additional questions went out. I have a printout of it, but don't find it in my saved TTB electronic folder, or even in "Sent Messages."  Anyway, let me try my questions again.
>
> First of all, we trust that the TTB received our 2005 and 2004 revised 702 forms.
>
> Secondly, I wanted to share with you that all of our "exports" went out of Tiger Mountain Services, so they won't be on K Vintners' 702 reports.  This will probably continue to be the case.
>
> Now, for my questions — let's look at 2004 (based on our revised/corrected 702s).  I'm thinking that if I outline our year, you assist us in figuring out how you understand the tax situation, it will help us understand:
>
> 2004 as corrected for K Vintners
> 29.15G produced
> sold out of K Vintners (KV) 6,318.65G (under 14%)
> sold out of Tiger Mountain Services (TMS) 41,711.38G (under 14%)
>       exported out of TMS 66.57G (under 14%)
>
> Total Out of Bond (KV + TMS) = 48,030.03
>
> we pay tax on the 6,318.658 sold out of KV at $1 .07/Gallon, then take a $0.90 per gallon Small Producers Credit, for an effective tax rate of $0.17 per gallon.  For 2004, a total of $1,074.17 tax was due on removals from KV.
>
> it was our understanding from TMS that we can transfer our Small Producers Credit for their use on our behalf, since they are our bonded warehouse facility, so they paid (and billed us, and we reimbursed TMS) at $1 .07 per Gallon, less the $0.90 per gallon Small Producers

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 9

Credit, for an effective tax rate of $0.17 per gallon.  A total of $7,090.93 tax was due on removals from TMS on KV's behalf.

Is this correct?  **Yes, this is correct.**

Then, for 2005, we exceeded 100,000G removed, so we would then jump to $1.07 per gallon tax on all wine that was 14% alcohol and under on all gallons sold between KV & TMS 101,000G and over?

Is this correct?  **Yes, this is correct as and as long as your production does not exceed 150,999.9 gallons of wine.**

We then wondered how you saw our corrected 702s for 2004 and 2005 being processed.  Should I put together an excel spreadsheet showing the taxes we actually paid and compare it to the taxes we should have paid, and run it by you?  **You can if you want & then we can compare.**

If we end up owing you, we would then write a check (including interest and penalties), **What we would probably do is have it added to another Excise Tax return as an "increasing Adjustment"** and

if we end up with a refund, we would just file twice a month, until we had used up the refund?  **If you end up with a refund, you would have to file a claim form & ask for a credit to be taken on your Excise return as a "Decreasing Adjustment".  I'll help you with that if we need it.**

Will the TTB take another look at the penalties and interest billed to Tiger Mountain Services for 2004 (which we paid)? **The Tiger Mountain part is being handled by someone else so I [can't] answer that at this time.**

ECF Nos. 44-3 at 20–22; 54-1 at 2–4.

In 2007, the TTB performed another audit of Tiger Mountain for the tax years 2005 and 2006.  ECF Nos. 43 ¶ 27; 49 ¶ 15; 56 at 9–10.  That audit

concluded that Tiger Mountain was not eligible to claim the tax credit on the

Hogue/Wahluke wines because the wines were not "produced" by K Vintners.

ECF Nos. 43 ¶ 28; 49 ¶ 15; 56 at 10.  The TTB also made a similar determination

with respect to Hogue/Wahluke wines shipped to Tiger Mountain in 2007 and

2008.  ECF Nos. 43 ¶ 31; 49 ¶ 15.  As a result of the disallowance for the tax

credit, the TTB required Tiger Mountain to pay additional tax and interest of at

least $327,496.83 for excise taxes not properly paid from 2005 until 2008.[2]  ECF

Nos. 43 ¶ 31; 49 ¶ 16; 56 at 10.  Tiger Mountain paid this amount under protest

and was reimbursed by K Vintners pursuant to the Plaintiffs' agreement.  ECF

Nos. 43 ¶¶ 33, 34; 49 ¶ 17; 56 at 11.

---

[2] The TTB assessed a total tax liability against Tiger Mountain of $433,238.37.
ECF No. 1 ¶ 26 (Complaint).  Plaintiffs originally sought a refund for that entire
amount.  *Id.* ¶ 36.  Defendant contends that $126,580.05 of this amount was not
assessed as disallowance of the tax credit, but because Tiger Mountain had late-
filed many of its returns and had made late tax payments.  ECF No. 43 ¶ 32.
Defendant has provided an accounting to Plaintiffs, but Plaintiffs allege they have
not been able to confirm the accounting.  ECF No. 48 at 1 n.1.  Because the Court
concludes that Defendant is entitled to Summary Judgment, the exact amount
assessed by disallowance of the tax credit is not a material issue.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 11

K Vintners and Tiger Mountain submitted a refund request on November 8, 2010.  ECF Nos. 43 ¶ 35; 44-1 ¶ 32; 49 ¶ 20; 56 at 11.  The TTB denied that request on April 5, 2011.  ECF No. 44-1 ¶ 33; 49 ¶ 21.  Plaintiffs filed this lawsuit on October 1, 2012, seeking a refund for the amount of additional taxes and interest imposed after the TTB disallowed Tiger Mountains' claim to the tax credit.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 12

motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## DISCUSSION

The parties' cross-motions present two issues for the Court to consider:  (1) whether Tiger Mountain was eligible to claim the tax credit; and (2) whether the United States should be estopped from disallowing the credit because of erroneous information provided by TTB Specialist Addison.  Plaintiffs contend that Tiger Mountain was entitled to claim the tax credit on the Hogue/Wahluke wines.  In the alternative, Plaintiffs contend that even if Tiger Mountain is not entitled to claim the tax credit, the United States should be estopped from assessing the full amount of the excise tax because TTB Specialist Addison made erroneous representations to K Vintners that Tiger Mountain could, in fact, claim the credit.  The United States counters that Tiger Mountain was not eligible to claim the credit because K Vintners did not "produce" the Hogue/Wahluke wines as required by § 5041(c)(6). The United States argues further that Plaintiffs cannot establish the necessary elements to estop the TTB from assessing the full amount of the excise tax.

//

//

## I.    Whether Tiger Mountain was eligible to claim the tax credit.

Under the terms of § 5041(c)(6), a transferee in bond may claim the tax credit if (1) "wine produced by any person would be eligible for any credit under [subsection (c)(1)] if removed by such person," (2) the wine is transferred in bond and the transferee is liable for the excise tax, and (3) the "producer" holds title to the wine at the time of its removal and provides the transferee with the information necessary to determine the excise tax due.  The second and third elements are not at issue before the Court.  The parties do not dispute that the Hogue/Wahluke wines were transferred in bond to Tiger Mountain or that Tiger Mountain was liable for the excise tax due on the wine.  The parties also do not dispute that K Vintners held title to the Hogue/Wahluke wines at the time of the wine's removal or that K Vintners provided the necessary information to Tiger Mountain to determine the excise tax due.  The only issue disputed by the parties is whether the Hogue/Wahluke wines were "produced" by a person who would be eligible for the credit under § 5041(c)(1) if such person had removed the wines from bond.  Because Hogue and Wahluke are large wineries not eligible for the tax credit themselves, the wines fermented and bottled at the Hogue and Wahluke facilities

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

1    are only eligible for the credit if K Vintners "produced" the wine.[3]  The Court must

2    therefore determine what it means to "produce" wine.

3        As an initial matter, however, the Court must acknowledge the plain and

4    unambiguous wording of the statute, § 5041(c)(1) and (c)(6).  "[T]he first step in

5    interpreting a statute 'is to determine whether the language at issue has a plain and

6    unambiguous meaning with regard to the particular dispute in the case.'"  *Texaco*

7    *Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) (quoting *Robinson v. Shell*

8    *Oil Co.*, 519 U.S. 337, 340 (1997)).  "The inquiry ceases if the statutory language

9    is unambiguous and the statutory scheme is coherent and consistent."  *Id*. (quoting

10   *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002)).  "The Supreme

11   Court has further noted that '[i]f a court, employing traditional tools of statutory

12   construction, ascertains that Congress had an intention on the precise question at

13   issue, that intention is the law and must be given effect.'"  *Id*. (quoting *Chevron,*

14   *U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).

15       Under § 5041(c)(1), a small wine producer may claim the tax credit on each

16   gallon of the first 100,000 gallons of wine "removed" from the producer's bonded

17   premises so long as the wine was produced in "qualified facilities" in the United

18

19   [3]  The parties agree that K Vintners was a small wine producer during the relevant

20   time period.

States.  By the plain meaning of § 5041(c)(1), for the tax credit to apply, wine produced in "qualified facilities" need only be "removed" for consumption or sale during a calendar year in which the small wine maker produced less than 250,000 gallons of wine.

Under the amended subsection (c)(6), the tax credit can also be claimed by a transferee in bond for wine "produced" by any person who would be eligible for any credit if the wine was removed by that person.  Put another way, the tax credit may be claimed for wines "produced" by small domestic wine producers.  While subsection (c)(1) allows a small winery to claim a credit for wine produced at qualified facilities and *removed* from that winery's bonded premises, subsection (c)(6) allows another bonded premises to claim a credit only for wines *produced* by a domestic small winery, transferred in bond and sold from the transferees

premises.  The TTB has interpreted the statute in this way, and asserts that the Court should defer to its interpretation.[4]

Plaintiffs nevertheless argue that the tax credit is available following the transfer in bond of any wine that a domestic small winery may claim a credit for under (c)(1), whether produced by the small winery or not.  Plaintiffs would effectively read the word "produced" out of § 5041(c)(6)(A).   It is the Court's duty "to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).  The Court must give effect to the word "produced" if possible.

Plaintiffs' argument is founded on two bases.  First, Plaintiffs attempt to show that TTB's current interpretation is inconsistent and contradictory to what TTB previously stated in the rule-making note quoted *supra,* that the tax credit

---

[4]  The TTB also represents that a small winery may purchase wine from another winery, remove that wine for sale or consumption from its bonded premises, and still receive the tax credit.  Those are not, however, the facts of this case.  Nor does a comprehensive, plain reading of the entire statute support this assertion, unless the other winery was also in fact a small domestic producer, i.e., a "qualified" facility.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 17

"was not conditioned on the producer actually producing the wine removed."  ECF No. 48 at 10 (quoting from 72 Fed. Reg. 65452).  The TTB made this statement in the context of explaining the history and specific wording of § 5041(c)(1) prior to the retroactive addition of subsection (c)(6) in 1996.  *See* 72 Fed. Reg. 65452–53. The TTB explained that removal from the small producer's bonded premises of wine by an eligible small producer was not conditioned on the producer actually producing the wine removed.  Thus, TTB explained that a small producer could take the tax credit on wine purchased and received in bond as long as the wine was within the first 100,000 gallons of wine *removed* during the calendar year *from the small producer's premises*.

However, it is critical to recognize that those are not the facts of this case. Plaintiff did not remove the Hogue/Wahluke wines from K Vintner's bonded premises.  Indeed, Plaintiff never possessed the Hogue/Wahluke wines on its own bonded premises, they were transferred in bond from Hogue/Wahluke wineries to Tiger Mountain and from there sold out of bond and taxed.

In further support of their first argument, Plaintiffs point to a statement on the TTB website's "Quick Reference Guide to Wine Excise Tax":

* * *

**8.  May credit be taken on wine purchased from another winery?**

Credit may be taken on wine the small producer did not produce so long as:

The small producer produces some wine;

There is no benefit to any winery which would not otherwise be entitled to credit.

It may be blended with the small winery's own production, or removed as a separate product.

*Quick Reference Guide to Wine Excise Tax*, TTB,

http://www.ttb.gov/tax_audit/taxguide.shtml ("Last reviewed/updated

07/27/2010"). The website does not indicate upon which statutory provision the

answer to the question relies. The answer appears consistent with TTB's prior

interpretation of § 5041(c)(1), but again, those are not the predicate facts of this

case. While the answer appears to be inconsistent with the plain wording of

subsection (c)(6), it is certainly ambiguous as to what is meant by the constraining

language that "[t]here is no benefit to any winery which would not otherwise be

entitled to credit." In any event, the website cautions visitors that the online guide

"is intended to be a brief overview of the basic requirements" and provides links to

the complete text of the wine regulations and tax code, as well as contact

information for the National Revenue Center. *Id.* (last visited Jan. 1, 2015). The

Court does not view this answer, given in a brief overview of wine tax regulations,

as a contradictory or binding interpretation of the interplay between subsections

(c)(1) and (c)(6).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 19

1    Plaintiffs' second argument relies upon the broad idea that in enacting

2  subsections (c)(1) and (c)(6) Congress "intended to protect and promote small

3  domestic winemakers like K Vintners by shielding them from any tax increase . .

4  . ." ECF No. 48 at 17.  The Court has thoroughly reviewed the legislative history

5  of Public Law 104-188, the law which retroactively enacted § 5041(c)(6), and has

6  found only one statement regarding Congress's intent, appearing identically in both

7  the House and Senate reports:

8       The bill clarifies that wine produced by eligible small wineries may be
        transferred without payment of tax to bonded warehouses that become
9       liable for payment of the wine excise tax without losing credit
        eligibility.  In such cases, the bonded warehouse will be eligible for
10      the credit to the same extent as the producer otherwise would have
        been.

11
        The bill further clarifies that the Treasury Department has broad
12      regulatory authority to prevent the benefit of the credit from accruing
        (directly or indirectly) to wineries producing in excess of 250,000
13      gallons in a calendar year.

14      It is intended that the Treasury regulatory authority will extend to all
        circumstances in which wine production is increased with a purpose
15      of securing indirect credit eligibility for wine produced by such large
        producers.

16

17  S. REP. 104-281 at 149 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1474, 1623; H.R.

18  Rep. 104-586 at 147 (1996).  This statement confirms that Congress's intent was to

19  limit the credit to "wine produced by eligible small wineries."  Further, Congress's

20  clearly expressed concern to prevent larger wineries from taking advantage of the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 20

1   credit "directly or indirectly" underscores the strict limitation imposed by

2   § 5041(c)(6).

3        If the statute was interpreted as Plaintiffs contend, it would allow a large

4   winery to sell its products under a variety of labels owned by small wineries

5   producing very little of their own vintage per year, and thereby indirectly obtain

6   the economic benefit of the credit contrary to the express intention of Congress.  It

7   must have been this or similar type of structuring that Congress had in mind when

8   it limited the credit to "wine produced by eligible small wineries" and directed

9   regulations to prevent "indirect credit eligibility for wine produced by such large

10  producers."  Indeed, even subsection (c)(1) requires the eligible wine be produced

11  "at qualified facilities in the United States."  Qualified facilities must be a

12  reference to eligible small producers' facilities, a subset of all the bonded wineries,

13  otherwise there would be no reason to use this alternative terminology.  The use of

14  "qualified" in a statute that only applies to bonded premises would be redundant

15  were it not intended to specify a subset of bonded facilities.  This Court must

16  interpret statutes where possible in a manner that avoids redundancy.  *See*

17  *Commodity Futures Trading Comm'n v. White Pine Trust Corp.*, 574 F.3d 1219,

18  1224–25 (9th Cir. 2009).  Moreover, this plain and natural reading of the statutory

19  language renders the entire statutory scheme coherent and consistent.

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 21

1    Regardless, Plaintiffs' ambiguity argument cannot succeed as the plain

2    language of the statute is clear.  "The purpose of statutory interpretation is to

3    discern the intent of Congress in enacting a particular statute. . . .  Analysis must

4    begin with the language of the statute itself; when the statute is clear, judicial

5    inquiry into its meaning, in all but the most extraordinary circumstance, is

6    finished."  *United States v. Shill*, 740 F.3d 1347, 1351 (9th Cir. 2014), *cert. denied*,

7    135 S. Ct. 147 (2014) (internal quotation marks, citations, and brackets omitted).

8    The Court finds that § 5041(c)(6) clearly and unambiguously restricts eligibility for

9    the tax credit to wines "produced" by small wineries and transferred in bond.  Even

10   if the Court were to conclude that § 5041(c)(6) was ambiguous, which it does not,

11   the Court would still be compelled to apply the interpretation proffered by the TTB

12   as it is, in view of the brief legislative history, a reasonable reading of the statute

13   and is entitled to deference.  *See JT USA, LP v. C.I.R.*, 771 F.3d 654, 657–58 (9th

14   Cir. 2014) (recognizing judicial deference to an administrative agency's

15   interpretation under *Chevron* also applies to tax laws).

16        Alternatively, Plaintiffs advance the argument in their responsive briefing

17   that K Vintners did, in fact, produce the Hogue/Wahluke wines.  ECF No. 55 at 6–

18   9.  Plaintiffs argue that § 5041(c)(6) does not restrict the credit to wines produced

19   only on the domestic small winery's premises and that "production" can

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 22

encompass situations, such as here, where a small winery oversees the winemaking process at a larger winery.[5]

---

[5] Plaintiffs also allege that because the TTB approved labels for the Hogue/Wahluke wines that identified it as "produced and bottled" by K Vintners or one of its DBAs, that the TTB "officially confirmed" that the wines were produced by K Vintners. ECF No. 55 at 8. Plaintiffs have used as an example one label from a Holy Cow merlot "produced & bottled by Charles Smith Wines." ECF No. 55 at 8. In reply, Defendant has presented evidence that this label was approved by the TTB based upon Wahluke's representation that Wahluke would be producing wines under the "Charles Smith Wines" name, which K Vintners had authorized Wahluke to use. *See* ECF No. 57 at 7; 61 ¶ 13–17; 61-1; 61-2. Wahluke's representations to the TTB did not identify K Vintners as the producer, but instead indicated that Wahluke would be producing the wine at its bonded premises in Mattawa. ECF No. 61-1 ¶ 8; 61-2 ¶ 8. The Court finds the TTB labeling proceeding of no relevance to the taxing question before the Court. Whether or not the TTB labeling specialists correctly approved labels based upon statements provided by K Vintner, Wahluke, or Hogue has no bearing on who "produced" the wine for purposes of tax liability.

In support of this argument, Plaintiffs cite TTB regulations enacted to provide guidance for persons seeking the credit. 27 C.F.R. § 24.278(e)(1) defines "production":

> For purposes of determining if a person's production of wine is within the 250,000 gallon limit, production includes, in addition to wine produced by fermentation, any increase in the volume of wine due to the winery operations of amelioration, wine spirits addition, sweetening, or production of formula wine. Production of champagne and other sparkling wines is included for purposes of determining whether total production of a winery exceeds 250,000 gallons. Production includes all wine produced at qualified bonded wine premises within the United States and wine produced outside the United States by the same person.

From this definition, Plaintiffs argue that "production" for purposes of determining whether a wine is qualified for the credit includes "wine produced at **any** qualified winery" whether a small producer or large. ECF No. 55 at 6 (emphasis in original). This argument fails because the definition in 27 C.F.R. § 24.278(e)(1), by its own terms, is only intended to determine whether "production of wine is within the 250,000 gallon limit," for purposes of determining if a producer is a small producer. That is, it is only intended as guidance in calculating the gross wine production of a winery, not which wines are qualified for the credit. Plaintiffs' proposed interpretation would broadly qualify for the credit any wine produced at any bonded winery within or outside the United States. That

interpretation is inconsistent with the statute which expressly disallows the credit for foreign-produced wines.  26 U.S.C. § 5041(c)(1).[6]

Moreover, Plaintiffs' proposed interpretation fails to account for the fact that the credit only applies, under both the statute and the regulation, to wine produced by a "qualified winery."  26 U.S.C. § 5041(c)(1); 27 C.F.R. § 24.278(e)(1).  As the Court has stated, *supra*, the use of the phrase "qualified winery" in the statute can only be a subset of all bonded wineries.  The same stands true for the regulations.  A winery is only "qualified" to obtain the credit if it is a small wine producer.  As such, § 24.278 can be read as stating that "production" includes all wine that a small producer has produced, including those produced outside the United States.  However, under the statute, only a portion of those wines (i.e., still wines produced within the United States) would qualify for the credit.  This interpretation is consistent with the overall statutory language.

The United States has cited a number of regulations purporting to define when wine is "produced."   For instance, 27 C.F.R. § 24.176 states that "[u]pon completion of fermentation or removal from the fermenter, the volume of wine will

---

[6] It would also be inconsistent with the statutory language disallowing the credit for champagne or other sparkling wine.  26 U.S.C. § 5041(c)(1) (disallowing the credit for wine described in subsection (b)(4)).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 25

be accurately determined, recorded and reported . . . as wine produced." 27 C.F.R. § 24.10 defines "own production" as "wine produced by fermentation in the same bonded winery . . . ."[7]  The common thread among the definitions is that wine is produced when and where it is fermented.

Nevertheless, Plaintiffs still assert K Vintners was so involved in the production of the Hogue/Wahluke wines that the Court should conclude that K Vintner produced the wine.  It is undisputed that K Vintners directed the blending and bottling of the Hogue/Wahluke wines.  However, it is also undisputed that the entire fermenting and bottling process occurred on the Hogue and Wahluke bonded premises, not at K Vintners' bonded premises.  A winery may only lawfully "produce" wine on its own bonded premises.  *See* 26 U.S.C. § 5041(f).  A wine bond only applies to wines "in transit to or on bonded wine premises, and to operations of the bonded wine premises . . . ." 27 C.F.R. § 24.146(a).  K Vintners could not legally "produce" wine on the bonded premises of Hogue or Wahluke.[8]

_____

[7] 26 U.S.C. § 5392 also defines "own production" as "wine produced by fermentation."

[8] K Vintners did not have an "alternating proprietor arrangement" with either Hogue or Wahluke.  Such an arrangement would have allowed K Vintners to act as proprietor of these bonded facilities for periods of time.  *See* 27 C.F.R. § 24.136;

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 26

K Vintners did not "produce" the Hogue/Wahluke wines as required to transfer the credit to Tiger Mountain under § 5041(c)(6) because K Vintners did not ferment the wines on its bonded premises.  At most, K Vintners' principal, Charles Smith, oversaw and directed some of the operations of Hogue and Wahluke, the large wineries that "produced" the Hogue/Wahluke wines on his behalf and under authorization to use one or more of the trade names owned by K Vintners.  *See, e.g.*, ECF Nos. 60-2 (letter from Charles Smith stating that "Wahluke Wine Company will produce and package the wine on behalf of CHARLES SMITH WINES and is authorized to use the trade name for production, brand registration and federal label approval purposes."); No. 60-3 (Wahluke's amended, non-transferable TTB permit to produce and blend wine under several trade names, including Charles Smith Wines).  K Vintners did not produce those wines, but merely allowed trade names it owned to be applied to wines produced by the Hogue and Wahluke wineries.

Therefore, the United States correctly determined that Tiger Mountain was not allowed to claim K Vintner's small producer tax credit for the Hogue/Wahluke

---

TTB Cir. 2008-4.  The Court expresses no opinion regarding whether wines produced under such an arrangement would be eligible for the tax credit under § 5041(c)(6).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 27

1    wines it handled.  Plaintiffs have not identified a genuinely disputed material issue

2    of fact which would preclude summary judgment.[9]

3        **II.    Whether TTB should be estopped from disallowing the credit**

4        Alternatively, Plaintiffs argue the United States should be equitably

5    estopped from denying Tiger Mountain the credit because Plaintiffs relied on the

6    United States' advice regarding the proper method for claiming the credit.  ECF

7    No. 1 ¶¶ 38–43; 55 at 11–19.  The United States contends it cannot be equitably

8    estopped from enforcing the tax code in this case.  ECF No. 42 at 16–20.

9        "Reliance on the erroneous advice of an IRS agent will not support a

10    finding of equitable estoppel that justifies depriving the Treasury of funds for

11    which the relevant statutes do not authorize disbursement."  *Valley Ice & Fuel Co.,*

12    *Inc. v. United States*, 30 F.3d 635, 639 n.8 (5th Cir. 1994) (citing *Office of*

13    *Personnel Mgmt. v. Richmond*, 496 U.S. 414, 425–26 (1990) as "holding that the

14    erroneous advice of a government official will not give rise to a claim of equitable

15    estoppel against the government that would require payment of funds from the

16

17

_____

18    [9] Plaintiffs have expressed doubt as to the amount of record keeping penalties and

19    interest that was assessed and compromised, ECF No. 56 at 11, but have not

20    otherwise contested the issue.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 28

Treasury that the relevant statutes did not authorize"). As the Supreme Court has succinctly stated:

> Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain, it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. . . . This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior position. . . . The Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation. . . . Accordingly, petitioners' "taxpayer reliance" argument is unavailing.

*Dickman v. C.I.R.*, 465 U.S. 330, 343 (1984) (citations and footnotes omitted). Plaintiffs' estoppel claim is thus unavailable, but even if it were available it fails on the merits.

The Ninth Circuit has held that in certain cases, where "justice and fair play require," the doctrine of equitable estoppel may be applied against the government. *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989). However, it is well-settled law "that the government may not be estopped on the same terms as a private litigant." *Id.* (citing *Heckler v. Cmty. Health Srvcs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984)). A party asserting equitable estoppel against the government must establish that "(1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." *Baccei v. United States*, 632 F.3d 1140, 1147

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 29

1    (9th Cir. 2011).  The burden of proof lies with the party seeking to raise estoppel.

2    *Id.*  Only after this threshold showing is met, will courts consider the traditional

3    elements of estoppel.  *See Watkins*, 875 F.2d at 709; *see also United States v.*

4    *Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995).

5         Plaintiffs must first establish that the TTB engaged in affirmative

6    misconduct going beyond mere negligence.  "There is no single test for detecting

7    the presence of affirmative misconduct; each case must be decided on its own

8    particular facts and circumstances."  *Watkins*, 875 F.2d at 707.  "Affirmative

9    misconduct on the part of the government requires an affirmative

10   misrepresentation or affirmative concealment of a material fact . . . such as a

11   deliberate lie or a pattern of false promises."  *Baccei*, 632 F.3d at 1147 (citations

12   omitted).  "[I]t does not require that the government intend to mislead a party."

13   *Watkins*, 875 F.2d at 707.

14        Plaintiffs contend that the TTB did not simply misinterpret the law, but that

15   "the TTB made affirmative misrepresentations of fact, that the TTB knew was

16   wrong, that K Vintners reasonably relied on."  ECF No. 55 at 18.  The undisputed

17   evidence in the record, however, does not bear this out.

18        The e-mail exchange between Ms. Clinton and TTB Specialist Addison

19   shows that it was Ms. Clinton who provided a set of incomplete facts to TTB

20   Specialist Addison and that TTB Specialist Addison responded by applying her

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 30

1    interpretation of the law to those limited facts.  The incomplete facts did not

2    disclose that K Vintners did not produce the wine sold from Tiger Mountain.

3    Plaintiffs contend that TTB Specialist Addison's phrase "Yes, that is correct" was

4    the government's affirmative misconduct.  ECF No. 55 at 12, 13.  But TTB

5    Specialist Addison did not misrepresent any material facts, she made no

6    representation of fact at all.  TTB Specialist Addison responded to Ms. Clinton's

7    asserted facts with a legal interpretation that the government cannot be estopped

8    from correcting now that it knows K Vintner did not produce the wine at issue.

9    *Schuster v. C.I.R.*, 312 F.2d 311, 317 (9th Cir. 1962) ("[T]he general proposition

10   has been that the estoppel doctrine is inapplicable to prevent the Commissioner

11   from correcting a mistake of law.")

12       Plaintiffs nevertheless contend that the United States should be estopped

13   from denying the credit for two additional reasons.  First, Plaintiffs argue that the

14   United States should be estopped because the TTB approved K Vintners' labels

15   which "affirmed that K Vintners produced the wine, and thus took a position

16   contrary to the one taken in this action . . . ."  ECF No. 55 at 15.  As the Court has

17   explained, *supra* note 5, the fact that the labels were approved has no bearing on

18   the tax issues before the Court.  Indeed, the labeling process even shows that the

19   wine was not produced by K Vintners.  *See, e.g.*, ECF No. 61-1 (application for

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 31

label approval indicating that Wahluke is the producer of wine using the Charles

Smith Wines and Holy Cow trade names on the labels).

Second, Plaintiffs argue that the United States should be estopped because

the TTB had previously completed an audit of Tiger Mountain for the 2003 and

2004 tax years and concluded that Tiger Mountain could not take the credit, but the

TTB had failed to inform Plaintiffs of that conclusion.  ECF No. 55 at 14.

Apparently, that audit "fell through the cracks" and no collection of taxes owed

was ever assessed for those two years.  ECF Nos. 55 at 14; 50-1 at 26–27.  There is

no affirmative statement or concealment of a material fact when an agency merely

fails to notify an individual that his or her tax filing is incomplete or invalid.  *See*

*Baccei*, 632 F.3d at 1147 ("The IRS's failure to inform a taxpayer that he has not

properly requested an extension is mere inaction that cannot support a claim of

equitable estoppel."); *Lavin v. Marsh*, 644 F.2d 1378, 1384 (9th Cir. 1981) ("A

mere failure to inform or assist does not justify application of equitable estoppel.").

While such a failure may be negligent, "negligence alone will not support a claim

of equitable estoppel against the government."  *Baccei*, 632 F.3d at 1147.  That the

TTB could have levied an assessment against Tiger Mountain at an earlier date, but

failed to do so, does not establish an act warranting estoppel in this case.

Even were Plaintiffs able to establish that TTB Specialist Addison had

affirmatively misrepresented a material fact, estoppel would only be appropriate

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 32

where a "person might sustain such a profound and unconscionable injury in reliance on the [tax official's] action as to require, in accordance with any sense of justice and fair play, that the [tax official] not be allowed to inflict the injury." *Schuster*, 312 F.2d at 317.  The Court does not find that Plaintiffs have suffered a profound and unconscionable injury.  First, Plaintiffs have been required to pay the appropriate amount of taxes.  Second, aside from one ambiguous statement ("Yes, that is correct"), TTB Specialist Addison had informed Ms. Clinton that the credit only applied to wine "REMOVED" from K Vintners and that K Vintners "cannot claim the removals made to Tiger as they were made in bond, not tax paid." *See* 44-3 at 22; 54-1 at 4.  Given TTB Specialist Addison's express warnings, even in light of a later ambiguous statement, Plaintiffs were fairly warned that they were attempting to take a credit on legally dubious grounds.  Plaintiffs chose to place their entire trust in that single ambiguous statement.  Plaintiffs did not act diligently to protect their own interests by clearly expressing the factual situation or conducting their own analysis of the underlying statute.  *Cf. Lavin*, 644 F.2d at 1384 ("[B]efore invoking the doctrine of estoppel we ask whether the citizen dealing with the government has acted diligently to protect his own interests.").  That Plaintiffs later incurred a penalty for attempting to transfer the credit does not amount to an unconscionable injury, but a calculated risk on Plaintiffs' part to obtain a financial benefit.

1    The circumstances in this case, as demonstrated by the undisputed material

2  facts in the record, do not warrant estopping the United States from denying the tax

3  credit to Tiger Mountain.

4  **ACCORDINGLY, IT IS HEREBY ORDERED:**

5    1.  The United States' Motion for Summary Judgment (ECF No. 42) is

6      **GRANTED**.

7    2.  Plaintiffs' Motion for Summary Judgment (ECF No. 48) is **DENIED**.

8    The District Court Executive is hereby directed to enter this Order, enter

9  **JUDGMENT** for Defendant on all claims, provide copies to counsel, vacate all

10  pending hearings and trial and **CLOSE** the file.

11    **DATED** January 21, 2015.

12

13      _Thomas O. Rice_
      THOMAS O. RICE
      United States District Judge

14

15

16

17

18

19

20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 34